Judge Hellerstein

08 CV 5620

## UNITED STATES DISTRICT COURT
## THE SOUTHERN DISTRICT OF NEW YORK



RECEIVED
JUN 20 PM 5:13
U.S. DISTRICT COURT
S.D.N.Y.

| | | |
|---|---|---|
| THORNBURG MORTGAGE HOME LOANS, INC., | : | |
| | : | |
| Plaintiffs, | : | Civ. A. No. |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| PREFERRED FINANCIAL GROUP, INC., | : | |
| | : | |
| Defendant. | : | |

Plaintiff Thornburg Mortgage Home Loans, Inc. ("TMHL"), by way of Complaint

against defendant Preferred Financial Group, Inc. ("Preferred") states as follows:

### THE PARTIES

1.    TMHL is a Delaware Corporation with its principal place of business

located at 150 Washington Street, Suite 302, Santa Fe, New Mexico. TMHL is in the business

of, among other things, originating, purchasing and servicing residential mortgage loans.

2.    Preferred is a California Corporation with its principal place of business

located at 112 Park Place, Millbrae, California. Preferred, among other things, originates

residential mortgage loans and then sells them in the secondary market to TMHL pursuant to a

Correspondent Sellers Guide and a Correspondent Loan Purchase Agreement.

### JURISDICTION

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §

1332(a) (2) because this is an action between a Delaware corporation and a California

corporation, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    This Court has personal jurisdiction over Preferred by way of Section 11(c) of the Correspondent Loan Purchase Agreement at issue in this litigation.  Under Section 11(c) of the agreement, Preferred consented to the jurisdiction of any Federal or State court located in the State of New York.

## VENUE

5.    Venue in this Court is proper under Section 11(c) of the Correspondent Loan Purchase Agreement at issue in this litigation.  Through this paragraph, Preferred consented to the venue of any Federal or State court located in the State of New York.  Venue also is proper because Preferred is subject to personal jurisdiction in the Southern District of New York.

## FACTS

### The Correspondent Sellers Guide and
### The Correspondent Loan Purchase Agreement

6.    A Correspondent Sellers Guide (the "Guide") applies to all loans that TMHL purchases from its correspondent loan originators.  The Guide, among other things, (a) sets forth the criteria for loans that TMHL will purchase, (b) outlines certain representations and warranties for the loans that Correspondents sell to TMHL, and (c) outlines the remedies available to TMHL if the representations and warranties are breached.

7.    Under Section 8.2 of the Guide a "Correspondent" is defined as the "seller of an Eligible Loan to TMHL pursuant to the terms of the Correspondent Loan Purchase Agreement and this Correspondent Sellers Guide."

8.    At all relevant times, Preferred was a Correspondent for TMHL as defined in the Guide.

9.      On April 16, 2004, Preferred and TMHL entered into a Correspondent Loan Purchase Agreement (the "Agreement"). Attached as Exhibit A is a true and accurate copy of the Agreement.

10.     Under the terms of the Agreement, TMHL agreed to purchase from Preferred, and Preferred agreed to sell to TMHL, certain residential mortgage loans that Preferred originated.

11.     The Agreement expressly incorporates the terms of the Guide. Attached as Exhibit B are relevant portions of the Guide.

12.     A loan that fits within the criteria set forth within the Guide is defined as an "Eligible Loan" under the Agreement.

13.     Under Section 3 of the Agreement, if a mortgage loan fits within the criteria in the Guide, Preferred may "sell, transfer, assign, set over and convey to TMHL, without recourse, but subject to the terms and provisions of this Agreement, all the right, title and interest of [Preferred] in and to one or more Eligible Loans."

14.     As consideration for the sale, transfer or assignment of Eligible Loans, TMHL will pay Preferred a purchase price agreed to by the parties.

15.     Under Section 3(f) of the Agreement, the parties agreed to a first payment default provision which states:

> In the event any borrower defaults on the payment of the first
> payment due on an Eligible Loan, [Preferred] shall repurchase such
> Eligible Loan from TMHL, at TMHL's sole option, pursuant to the
> Guide.

16.     The Agreement also contains certain representations and warranties (including representations and warranties contained in the Guide, which are expressly

incorporated into the Agreement) that Preferred made to TMHL with respect to the Eligible
Loans TMHL purchased.

17.    Under the Section 5(b) of the Agreement, each of the representations and
warranties listed in the Agreement and Guide were granted to TMHL "without regard to
[Preferred's] actual or implied knowledge of the untruth" of the representation or warranty.

18.    One of the representations and warranties that Preferred provided was that
there was no fraud, dishonesty, misrepresentation, error, omission, negligence or similar
occurrence with respect to any Eligible Loan.

19.    Section 6.1(a) (40) of the Guide states:

> There has been no fraud, dishonesty, misrepresentation, error,
> omission, negligence, or similar occurrence with respect to such
> Eligible Loan that has taken place on the part of any person
> including without limitation, the Mortgagor, any mortgagee, any
> appraiser, any builder or developer, or any other party involved in
> the origination of the Eligible Loan or in connection with the sale
> of such Eligible Loan. The correspondent has reviewed all of the
> documents constituting the Mortgage File and has made such
> inquiries as it deems necessary to make and confirm the accuracy
> of the representations set forth herein.

20.    Section 6.2 of the Guide provides that "upon discovery by the
Correspondent or TMHL" of a breach of any representations and warranties, including the no
fraud representation and fraud warranty, "the discovering party shall give prompt written notice
to the others" of the breach or defect.

21.    In addition, Section 6.2 of the Guide requires Preferred to "use its best
efforts to promptly cure in all material respects any such breach or defect within sixty (60) days
of the earlier of either discovery by or notice to the Correspondent of such breach or defect."

22.    Section 6.2 of the Guide further provides that if the defect cannot be cured
and it is a breach of Section 6 of the Guide, Correspondent is required to repurchase either "(1)

all of the Eligible Loans or (2) such of the Eligible Loans selected by TMHL so that, after such repurchase, such breach or defect is cured in all material respects."

      23.    Section 6.2 of the Guide, further recognizes that the Correspondent has an obligation to "indemnify and hold harmless TMHL against any losses, damages, penalties, fines, forfeitures, reasonable legal fees, and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense, or assertion based on or grounded upon, or resulting from a breach of the Correspondent's representations and warranties contained in this Correspondent Sellers Guide or the Correspondent Loan Purchase Agreement."

      24.    The rights outlined in Section 6.2 of the Guide are echoed in Section 5 of the Agreement, which states, among other things, that TMHL has the express right to demand that Preferred repurchase an Eligible Loan from TMHL if any of the representations and/or warranties that Preferred made with respect to the Eligible Loans is determined to be untrue.

      25.    Section 5(b) of the Agreement recognizes that TMHL can invoke the repurchase right even if Preferred has no knowledge of the false nature of the representations or warranties.

      26.    Section 5(c) of the Agreement recognizes that Preferred has an obligation to indemnify and hold TMHL harmless for any damages or losses sustained by a breach of a representation and warranty.

      27.    Under Section 11(b) of the Agreement, Preferred and TMHL agreed that all disputes related to the Agreement would be governed by New York law.

      28.    Under Section 11(c) of the Agreement, Preferred and TMHL agreed that jurisdiction and venue for any dispute arising under the Agreement will lie in any "Federal Court or State Court located in the State of New York."

29.     Under Section 11(k) of the Agreement, Preferred and TMHL further agreed that the prevailing party in any litigation involving the Agreement is entitled to recover attorney's fees and costs of the litigation.

### The 947 Acapulco Loan

30.     Upon information and belief, on or about July 18, 2006, Michelle Manzo purchased a property located at 947 Acapulco, Laguna Beach, California (the "Property") for the sum of $2.1 million.

31.     In order to fund the purchase of the Property, Manzo obtained a residential mortgage loan in the principal amount of $1,470,000 (the "947 Acapulco Loan"). The 947 Acapulco Loan was originated by Preferred.

32.     On or about August 4, 2006, TMHL purchased the 947 Acapulco Loan from Preferred for the sum of $1,506,463.60.

33.     Preferred represented to TMHL that the 947 Acapulco Loan was an "Eligible Loan" as defined under the Guide.

34.     In reliance on the representations and warranties outlined in the Guide, TMHL paid Preferred a premium of $36, 463.50 over the principal amount of the 947 Acapulco Loan.

35.     As part of the loan documentation for the 947 Acapulco Loan, Preferred had Ms. Manzo execute, among other things, a promissory note to evidence the amount of the 947 Acapulco Loan, and a deed of trust on the Property to secure the amount due under the 947 Acapulco Loan.

36.     Preferred also had a Uniform Residential Appraisal Report prepared for the Property which outlined the sales history of the Property and established a fair market value for the Property at $2.1 million.

37.     Following the sale of the 947 Acapulco Loan from Preferred to TMHL, on November 1, 2006, TMHL wrote to Preferred to advise it that the first payment due under the promissory note was not paid in violation of Section 3(f) of the Agreement and Section 6.1(a)(7) of the Guide.  A true an accurate copy of TMHL's November 1, 2006 letter is attached as Exhibit C.

38.     As a result of this first payment default, TMHL demanded that Preferred repurchase the 947 Acapulco Loan pursuant to Section 3(f) of the Agreement and Section 6.2 of the Guide.

39.     In the November 1, 2006 letter, TMHL also advised Preferred that it had concerns about certain possible discrepancies with the 947 Acapulco Loan.  These discrepancies were as follows:

a.      TMHL had reason to believe the promissory note evidencing the Loan might contain fraudulent signatures in violation of Section 6.1 (a)(40) of the Guide;

b.      The Uniform Residential Appraisal Report for the Property appeared to misrepresent the sales history of the Property in violation of Section 6.1 (a) (40) of the Guide; and

c.      TMHL had reason to believe Ms. Manzo may have misrepresented the occupancy status of the property in violation of Section 6.1 (a) (24) and (40) of the Guide.

40.    In response to TMHL's letter, Preferred did not agree to repurchase the 947 Acapulco Loan from TMHL.

41.    Instead, Preferred forwarded TMHL certain loan payments and represented to TMHL that the 947 Acapulco Loan was set to be refinanced on December 1, 2006.

42.    Significantly, at no time did Preferred advise TMHL that it believed the 947 Acapulco Loan was procured by fraud.

43.    As a result of Preferred's response, on November 20, 2006, Preferred and TMHL entered into a letter agreement whereby TMHL agreed to temporarily defer its repurchase demand if Preferred satisfied the following conditions:

        a.    Preferred got the Borrower to forward TMHL by November 24, 2006, the October and November monthly payments for the 947 Acapulco Loan;

        b.    Preferred got the Borrower to forward TMHL by December 1, 2006, the December monthly payments for the 947 Acapulco Loan;

        c.    The 947 Acapulco Loan is refinanced or paid off by December 15, 2006.

A true and accurate copy of the parties November 20, 2006 letter agreement is attached as Exhibit D.

44.    The conditions outlined in the November 20, 2006 letter agreement were never satisfied by Preferred because the 947 Acapulco Loan was neither refinanced nor paid off as promised.

45.     Accordingly, on or about December 16, 2006, TMHL demanded that Preferred repurchase the 947 Acapulco Loan in accordance with Section 3(f) of the Agreement.

46.     In response to TMHL's demand, Preferred failed and refused to repurchase the Loan.

47.     Thereafter, on June 1, 2007, Preferred surreptitiously instituted litigation in the Superior Court of California seeking to recover damages from Ms. Manzo and others based on fraud the defendants engaged in to procure the 947 Acapulco Loan. A true and accurate copy of the complaint that Preferred filed with the Superior Court of California is attached as Exhibit E.

48.     Despite Preferred's obligation under Section 5(b) of the Agreement and Section 6.1(a)(40) of the Guide to ensure that the 947 Acapulco Loan was not procured through fraud, however, Preferred did not inform TMHL of its suspicions nor did it provide TMHL with notice of the litigation concerning the 947 Acapulco Loan.

49.     On December 24, 2007, TMHL wrote to Preferred to make a final demand that Preferred repurchase the 947 Acapulco Loan. A true and accurate copy of TMHL's December 24, 2007 letter is attached as Exhibit F.

50.     Preferred failed and refused to repurchase the 947 Acapulco Loan.

**TMHL was forced to foreclose on the Property**

51.     As a result of Ms. Manzo's default under the terms of the 947 Acapulco Loan and Preferred's breach of the representations and warranties outlined in the Guide and Correspondent Loan Purchase Agreement and failure to repurchase the 947 Acapulco Loan, TMHL was forced to foreclosure on the Property.

52.     As a result of those foreclosure proceedings, TMHL was able to obtain title to the Property and then sell the Property on May 29, 2008.

53.     TMHL realized proceeds from the sale of the Property that were equal to $964,037.64.

54.     As a result of Preferred's breach of the representations and warranties outlined in the Guide and Correspondent Loan Purchase Agreement and failure to repurchase the 947 Acapulco Loan, TMHL sustained losses equal to approximately $282,837.15, associated with the deficiency in funds derived from the foreclosure, plus $36,463.50 in the premium it paid for the 947 Acapulco Loan, plus attorney fees and costs in pursuing its rights under the Agreement and Guide.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

55.     TMHL re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

56.     Preferred and TMHL entered into the valid and enforceable Agreement on April 16, 2004, whereby Preferred agreed to sell certain Eligible Loans to TMHL for consideration.

57.     Preferred breached Sections 3(f) of the Agreement and 6.2 of the Guide by failing and refusing to repurchase the 947 Acapulco Loan after Ms. Manzo defaulted on the first payment due and owing under the promissory note.

58.     Upon information and belief, Preferred also breached certain representations and warranties contained in the Agreement including, but not limited to, the following:

a.     The warranty relating to the accuracy of the appraisal that accompanied the Loan as outlined in Section 6.1(a) (40) of the Guide;

-10-

   b.  The warranty relating to occupancy status of the borrower as

      outlined in Section 6.1(a) (24) and (40) of the Guide; and

   c.  The warranty relating to lack of fraud, dishonesty,

      misrepresentation, error, omission, negligence, or similar

      occurrence with respect to the Loan contained in Section 6.1(a)

      (40) of the Guide.

  59.  Preferred also breached Section 6.2 of the Guide by failing to provide

prompt written notice of the breach of the above-referenced warranties.

  60.  Preferred further breached Section 6.2 of the Guide by failing to cure the

breaches of the above-referenced warranties, or by offering to repurchase the 947 Acapulco Loan

in the event the breaches could not be cured.

  61.  Preferred further breached Section 6.2 of the Guide by failing and refusing

to indemnify and hold TMHL harmless for losses TMHL sustained from the 947 Acapulco Loan.

  62.  As a result of Preferred's breach, TMHL has and continues to suffer

damages.

  WHEREFORE, TMHL respectfully request that the Court grant it the following

relief:

   a.  entry of judgment against Preferred awarding TMHL

      compensatory damages in an amount to be determined at trial;

   b.  entry of judgment against Preferred awarding TMHL reasonable

      attorney's fees, costs and interest as provided under Section 11(k)

      of the Agreement; and

c.    entry of judgment against Preferred awarding TMHL such other

and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

63.    TMHL re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

64.    The Agreement contained an implied covenant of good faith and fair dealing that required Preferred to act in good faith with respect to the origination of Eligible Loans it sold to TMHL.

65.    Upon information and belief, Preferred breached the implied covenant of good faith and fair dealing by, among other things, knowingly obtaining fraudulent signatures on the loan documents underlying the Loan; by knowingly providing an inaccurate appraisal that misrepresented the sales history of the Property that would serve as security for the 947 Acapulco Loan; by knowingly misrepresenting the occupancy status of the property; and by knowingly failing to advise TMHL of its belief that the 947 Acapulco Loan was procured by fraud.

66.    As a result of Preferred's breach of the implied covenant of good faith and fair dealing, TMHL has suffered and continues to suffer damages.

WHEREFORE, TMHL respectfully request that the Court grant it the following relief:

a.    entry of judgment against Preferred awarding TMHL

compensatory damages in an amount to be determined at trial;

b.    entry of judgment against Preferred awarding TMHL reasonable

attorney's fees, costs and interest as provided under Section 11(k)

of the Agreement; and

c.    entry of judgment against Preferred awarding TMHL such other

and further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION – UNJUST ENRICHMENT

67.    TMHL re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

68.    At all times relevant hereto, TMHL conferred a benefit upon Preferred by paying Preferred the sum of $1,506,463.60 for the 947 Acapulco Loan that was procured by fraud.

69.    At all times relevant hereto, Preferred accepted and retained, without objection, the benefit of TMHL's payment for the 947 Acapulco Loan.

70.    At all times relevant hereto, Preferred was aware of TMHL's reasonable expectation that Preferred would provide TMHL with the benefit of an Eligible Loan that fit within the criteria outlined in the Guide as consideration for the payment that TMHL made for the 947 Acapulco Loan.

71.    Preferred, however, never provided TMHL with the benefit of an Eligible Loan that fit within the criteria outlined in the Guide.

72.    As a direct and proximate result of Preferred's acceptance of the benefit that TMHL conferred, Preferred has been unjustly enriched at TMHL's expense.

WHEREFORE, TMHL respectfully request that the Court grant it the following relief:

a.    entry of judgment against Preferred awarding TMHL

compensatory damages in an amount to be determined at trial;

b.    entry of judgment against Preferred awarding TMHL reasonable

attorney's fees, costs and interest as provided under Section 11(k)

of the Agreement; and

c.    entry of judgment against Preferred awarding TMHL such other

and further relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION – PROMISSORY ESTOPPEL

73.    TMHL re-alleges and incorporates by reference the allegations contained

in the preceding paragraphs of the Complaint as if fully set forth herein.

74.    At various times representatives of Preferred promised TMHL that

Preferred would provide TMHL with an Eligible Loan in exchange for TMHL paying Preferred

the sum of $1,506,463.60.

75.    At various times representatives of Preferred also promised TMHL that

Preferred would repurchase the 947 Acapulco Loan if it was discovered that the loan did not fit

within the criteria of an Eligible Loan as outlined in the Guide.

76.    Preferred also represented that it would indemnify and hold TMHL

harmless for all losses associated with loans that did not fit within the criteria of an Eligible Loan

as outlined in the Guide.

77.    Preferred's representatives made these promises on behalf of Preferred

with the expectation that TMHL would rely upon them and pay Preferred the sum of

$1,506,463.60.

78.    TMHL reasonably relied upon Preferred's promises, and paid Preferred

the sum of $1,506,463.60.

79.    Preferred, however, never fully fulfilled its promises to provide TMHL with an Eligible Loan and/or to repurchase the 947 Acapulco Loan once it was discovered that the loan did not fit within the criteria of an Eligible Loan.

80.    Preferred also failed to fulfill its promise to indemnify and hold TMHL harmless for losses sustained from loans that did not fit within the criteria of an Eligible Loan as outlined in the Guide.

81.    As a proximate result of TMHL's reasonable reliance on Preferred's promises, TMHL has suffered damages.

WHEREFORE, TMHL respectfully requests that the Court grant it the following relief:

        a.    entry of judgment against Preferred awarding TMHL compensatory damages in an amount to be determined at trial;

        b.    entry of judgment against Preferred awarding TMHL reasonable attorney's fees, costs and interest as provided under Section 11(k) of the Agreement; and

        c.    entry of judgment against Preferred awarding TMHL such other and further relief as this Court deems just and proper.

Dated:  June 20, 2008

Angelo A. Stio III [AS 7880]
PEPPER HAMILTON LLP
The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY 10018-1405

PH: 212-808-2700
FAX: 212-286-9806

and

PEPPER HAMILTON LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08543-5276
PH: 609.452.0808
FAX: 609.452.1147

Attorneys for Plaintiff Thornburg Mortgage Home
Loans, Inc.